**Bernhard ROSEE, Plaintiff,**

v.

**BOARD OF TRADE OF the CITY OF CHICAGO, an Illinois corporation, et al., Defendants.**

**No. 63 C 1348.**

United States District Court
N. D. Illinois, E. D.
Aug. 24, 1964.

---

Richard F. Watt, David R. Kentoff, Cotton, Rockler, Watt & Jones, and Harry R. Booth, Chicago, Ill., for plaintiff.

Don H. Reuben and Jack S. Levin, Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., for Board of Trade of City of Chicago.

Richard A. Griffin and Joseph Borenstein, Chicago, Ill., for James E. Baggott, Jr. and Harris Haywood.

John R. Blomquist, Campbell, Miller, Carroll & Paxton, Chicago, Ill., for Donald W. Morrison.

Edward V. Hanrahan, U. S. Atty., Chicago, Ill., for Albert W. Kibby and Sam Gordon.

James J. Coughlin, Chicago, Ill., pro se.

WILL, District Judge.

Roger E. Harper, an employee of the Commodity Exchange Authority, has moved to quash a deposition subpoena

and a subpoena duces tecum served on him by plaintiff Rosee. In support of his motion, Harper states that he informed his superior, the Secretary of Agriculture, of the documents sought by subpoena and that the Secretary, pursuant to regulations adopted by him, has determined that the majority of the documents sought are restricted from disclosure and that officials of the Department of Agriculture are prohibited by law from producing them.

Two questions are presented by this motion to quash. First, may the Secretary of Agriculture withhold the documents in question on the ground that they are privileged? Second, if not, are the Secretary of Agriculture and his subordinates prohibited by law from producing them?

The documents sought are reports of commodity transactions by persons other than the plaintiff which may be relevant in the instant action since they involve persons whose activities were similar to those of plaintiff and the handling of which may cast light on plaintiff's contention that the defendants acted improperly in his case.

## I

Harper strongly urges that, while no claim of governmental privilege is made by his motion, regulations under the Federal Housekeeping Act, 5 U.S.C. § 22, prevent *him*—a subordinate of the Secretary of Agriculture—from producing the documents requested. Such an assertion, standing alone, would not be a claim of privilege. United States ex rel. Touhy v. Ragen, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417 (1951). Under Touhy, a subordinate may properly refuse to produce documents on the narrow ground that his department head may reserve this decision to himself under 5 U.S.C. § 22. The right to claim (or waive) privilege being reserved to the department head, a demand for the production of documents would apparently have to be directed to him and not to a subordinate.

Were it not for two subsequent cases, Touhy would dispose of the present motion since the Secretary of Agriculture is not before this Court. However, in United States v. Reynolds, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953) and in NLRB v. Capitol Fish Company, 294 F.2d 868 (5 Cir. 1961), the substantive merits of alleged governmental privilege were considered despite the fact that the department heads involved were not served. While Reynolds might be distinguished on the ground that the department head filed a "Claim of Privilege" on his own initiative, such was not the case in Capitol Fish. Noting this difference from Reynolds, the Fifth Circuit preferred to base its decision on the view that the question of privilege is as squarely raised by other acts of a department head as by an express claim made by him directly to the court. See 294 F.2d at 875.

This view is appropriate in light of the variations in intradepartmental procedure followed by different government agencies. The refusal of a subordinate to produce documents may be grounded on a determination by the department head going directly to "what documents can be produced" rather than to the narrow issue of who should be asked to produce. Were the determination only to the latter issue, Touhy would seem to control, but where it is clear that the department head has already made the substantive determination (Reynolds, Capitol Fish and here), no purpose is served by requiring that the request be made again, directly to the department head. The claim of privilege is as squarely raised by instructing the subordinate to communicate the Secretary's determination to the Court as by an express claim made directly by the Secretary. Hence, since Harper indicates that the Secretary of Agriculture has determined that certain documents may be produced while others may not, a claim of governmental privilege has, in effect, been made.

■ Unless the privilege is conferred by statute, the legitimacy of the privilege claimed must be determined by the Court. "Judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers". United States v. Reynolds, supra, 345 U.S. at 9, 73 S.Ct. at 533.

■ We find no statutory authority for the privilege claimed. The Federal Housekeeping Act, 5 U.S.C. § 22, now contains an express provision negating any such inference.

■ Without statutory authority, an executive officer may not erect a privilege which will bar judicial scrutiny. To allow such action, particularly where government agents are numbered among the defendants, would enable such an officer (here, the Secretary of Agriculture) to draw a cloak of secrecy around the acts of subordinates and thereby preclude ultimate determination of the propriety of their official conduct.

## II

■ Harper also contends that the Secretary of Agriculture and his subordinates, of whom he is one, are prohibited by law from producing the documents sought, citing Sec. 8 of the Commodity Exchange Act, 7 U.S.C. § 12, which authorizes the Secretary of Agriculture to make investigations and to

"publish from time to time, in his discretion, the result of such investigation and such statistical information gathered therefrom as he may deem of interest to the public, except data and information which would separately disclose the business transactions of any person and trade secrets or names of customers * * *."

This prohibition is later qualified to allow the Secretary in his discretion to make public the names, addresses and amounts purchased and sold by traders on boards of trade (7 U.S.C. § 12–1) and to publish the full facts concerning an operation which in his judgment disrupts a market or otherwise injures the public (7 U.S.C. § 12a (6)). ·

While the section restricts the data which the Secretary of Agriculture may "publish" its language would not appear to relate to disclosures pursuant to discovery proceedings under the Federal Rules of Civil Procedure and subject to supervision by the Court. Disclosure in these instances is not a publication. By protective order, the Court can limit the use of the information as is appropriate. Moreover, documents produced on discovery are not open to the public and even if subsequently received in evidence may be withheld from public inspection if necessary.

Where Congress has intended to proscribe the use of government-held data in judicial proceedings, it has not talked in terms of "publish" or "publication". Rather, it has expressed the prohibition explicitly. See, e. g., Federal Aviation Act of 1958, § 701, 49 U.S.C. § 1441(e); Act of May 6, 1910, c. 208, § 4, 36 Stat. 351 (1910), 45 U.S.C. § 41 (railroad accident investigations); Act of August 10, 1956, c. 1041, 70A Stat. 748 (1956), 10 U.S.C. § 7724 (information regarding naval vessels); P.L. 85–857, September 2, 1958, 72 Stat. 1236 (1958), 38 U.S.C. § 3301 (information in Veterans' Administration records).

It should be noted that some of the information here sought relates to transactions five or more years ago. Some also may clarify one way or the other plaintiff's charges of misconduct against subordinates in the Department of Agriculture. The language of Section 8 does not, in the Court's opinion, warrant the conclusion that Congress intended to preclude examination of such documents in judicial proceedings.

The motion to quash the subpoena duces tecum is denied. Should Harper, acting on the orders of the Secretary of Agriculture, continue to assert the claim of governmental privilege, the documents sought should be deposited with this Court for examination and further ruling

as to the legitimacy of the privilege claimed. Further, the processes of the Court are available for the issuance of any necessary protective order to prevent possible misuse of any information supplied.